

INTELLECTUAL PROPERTY LAW

July 9, 2021
**Via ECF**
The Honorable Sarah L. Cave
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

                           Re:    *Paul Rudolph Foundation v. Paul Rudolph Heritage Foundation*
                                    Case No.: 1:20-cv-8180-CM (SDNY)

Dear Judge Cave:

      We represent Defendants Paul Rudolph Heritage Foundation and Ernst Wagner ("Defendants") and respectfully submit this letter to request a discovery conference to assist the parties resolve a dispute regarding keyword email searching under the Stipulated eDiscovery Protocol ("Protocol") entered in this matter [D.E. 47]. A copy of the relevant sections of the Protocol are attached as Exhibit A.

**Meet and Confer Certification**
      Counsel certifies that in addition to written communications exchanged between counsel to try to resolve this dispute, counsel for the parties, namely Jeffrey Lindenbaum for Defendants and Cameron Reuber for Plaintiff, conducted a telephone conference on July 7, 2021 at 2:30 pm which lasted approximately fifteen minutes. During the call, counsel discussed the points outlined in this letter, and at the conclusion of this call agreed that an impasse had been reached requiring the Court's assistance.

**Protocol Background**
      The Protocol sets forth, among other things, a procedure for keyword searching of emails. Ultimately, each party may select up to six (6) of its adversary's custodians and up to fifteen (15) keywords. The first step in the process, which is outlined in Section D(1), allows each party to send the other side a list of proposed keywords and a list of descriptions of the types of custodians which may have relevant emails. This first step addresses the problem occurring at the beginning of discovery; each side in litigation typically does not know the identity of individuals at their adversary who are responsible for certain company functions (e.g., marketing, accounting, customer service, etc.). Section D(1) allows the parties to request this background information before having to make its custodian selections.

      Under Section D(2), the parties then respond to the requests for custodian information by identifying who at their company may have emails related to: (1) the list of proposed keywords; and (2) the job descriptions provided in Section D(1). For example, the requesting party may say tell us who is responsible for accounting and who may have emails related to the keywords

Hon. S. Cave
July 8, 2021
Page 2 of 3 – AX1060

"profits" and "royalties."  The responding party then identifies which employees (custodians) may serve in that function or have emails related to those keywords.

Once the requesting party is provided the list of potential relevant custodians, the Parties, under Section D(3), may select up to six custodians, and select the keywords that they want those custodians to search.  In this case, the Parties successfully navigated through the steps in D(1) and D(2).

**The Dispute**

A dispute arose when Defendants provided Plaintiff with its selection of custodians and its 15 keyword selections under Section D(3), using a keyword list which was not identical to the list of 15 keywords earlier provided under Section D(1).  Plaintiff argues that the keyword list that was provided under D(1) to help Defendants identify relevant custodians, must be identical to the list of keywords selected by Defendants in D(3).  Plaintiff is wrong.

Nowhere in the Protocol does it require a party to use the identical and unmodified list of step D(1) keywords in step D(3).  In fact, during the negotiations of the Protocol, Plaintiff on May 21, 2021 had proposed that the agreement limit the D(3) selection of keywords to only those keywords identified in D(1).  However, Defendants on May 26, 2021, rejected this restriction, specifically striking it from the Protocol.  *See,* Ex. B (deleting restriction that search terms must be from those "agreed upon in D(1)").  Plaintiff accepted that this restriction was stricken, it was entered by the Court with this restriction stricken, and Plaintiff cannot now change its position.

Considering even the practical implications of this dispute, the modification to Defendants' keyword list creates no additional or duplicative work for Plaintiff because prior to step D(3) neither side has begun the email searches.  Moreover, allowing a modification to the keyword lists between steps D(1) and D(3) is important because at step D(1) the requesting party is missing relevant information about the available, relevant custodians.  The purpose of the proposed keywords in Section D(1) is to help the requesting party identify relevant custodians.  Once the custodians are identified, the requesting party needs to be able to modify the keywords based on which custodians are ultimately selected.[1]  For example, a party may serve an initial proposed list of keywords directed to accounting, marketing, sales and customer service.  If it turns out that its adversary has no email custodian for customer service responsibilities, or the requesting party chooses not to select the customer service custodian, the list of keywords needs to be modified to shift from customer service keywords to keywords that are relevant to the actual available and selected custodians (which the requesting party does not know until step D(2)).

Perhaps more importantly, there is no harm or prejudice suffered by Plaintiff.  Under the Protocol, Defendants are allowed to select up to 15 keywords, and that is what they have done.  Plaintiff has not yet begun searching emails, so there is no duplicative work.  Yes, Plaintiff had to consider and disclose who are its relevant custodians based on Defendants' initial proposed list, but it is required to do that either way under the Protocol.  And yes, Plaintiff is now required to

---

[1] In this case it turned out that it did not matter because Plaintiff only had four custodians, so Defendants selected them all.  But the point is that Defendants never waived their right to modify this list and had a reasonable basis to believe its list could later be modified.

Hon. S. Cave
July 8, 2021
Page 3 of 3 – AX1060

search 15 terms, but it is also required to do that under the Protocol either way. Plaintiff's insistence on such a hard line rule against modifications to the keyword lists is also undermined by the fact that the Protocol already provides, under Section D(4), for further modifications, including for example, if the hit count for a particular term comes back too large.

Plaintiff has not raised any objection to the propriety of the actual requested terms (other than the timing of the modification to this list). In fact, Defendants' terms if anything are narrower than Plaintiff's own selection of keywords. See, Ex. C. Moreover, Plaintiff only has to search four (4) custodians, while Defendants are searching six.[2] Having not yet begun its keyword searches, Plaintiff will suffer no harm by searching the actual 15 terms that Defendants want searched rather than insisting that Plaintiff need only search the earlier list that Defendants had timely replaced.

**Relief Sought**

Defendants respectfully request that the Court compel Plaintiff to search the fifteen keywords that were timely served on June 29, 2021 (attached as Exhibit C), pursuant to Section D(3) of the Protocol, and that Plaintiff's unreasonable rejection of this list be overruled.

Thank you for your consideration.

Very truly yours,
COLLEN IP
s/ Jeffrey A. Lindenbaum
Jeffrey A. Lindenbaum
jlindenbaum@collenip.com

cc: Counsel of Record (Via ECF)

---

[2] Plaintiff has represented it only has four custodians.

# EXHIBIT A

# EXHIBIT A

MEMO ENDORSED

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/9/21
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PAUL RUDOLPH FOUNDATION, INC.,

                Plaintiff,

          -against-                  Docket No. 20 Civ. 8180 (CM)

PAUL RUDOLPH HERTIAGE FOUNDATION and
ERNST WAGNER,

                Defendants.
------------------------------------------------------------X

### STIPULATED ORDER RE: ELECTRONIC DISCOVERY PROTOCOL

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

**A.   SCOPE OF E-DISCOVERY**

Each party will conduct a diligent search of those reasonably accessible sources in which it has reason to believe relevant ESI responsive to the opposing party's discovery requests will be found. Reasonably accessible sources of ESI include personal computer hard drives, shared network drives and cloud-based storage services.

**B.   EXCLUSIONS**

The parties agree that Fed. R. Civ. P. 26(b)(2)(B) shall apply to the production of ESI in this case. In accordance with Fed. R. Civ. P. 26(b)(2)(B), the following types of ESI need not be reviewed under this Protocol unless specifically identified by a discovery request:

1. Voicemail.
2. Text messages and instant messages.
3. Logs of calls made from a mobile device.
4. Video and audio recordings stored only on a mobile device.
5. Residual, deleted, fragmented, damaged, or temporary data (*e.g.*, data stored in a computer's RAM).
6. Encrypted data/password protected files, where the key or password cannot be ascertained after reasonable efforts.

{10850/619695-000/02771166.1}

|    | **FIELD** | **DEFINITION** | **DOC TYPE** |
|----|-----------|----------------|--------------|
| 15 | DATESENT (mm/dd/yyyy) | Date sent | E-MAIL |
| 16 | TIMESENT (hh:mm:ss TZ) | Time sent | E-MAIL |
| 17 | DOCTYPE | Document type (e.g. .doc, .pst, .ppt, .xls, .pdf) | EDOCS |
| 18 | AUTHOR | Creator of document | EDOCS |
| 19 | DATECREATED | Date (and time) file was created according to directory metadata | EDOCS |
| 20 | DATELASTMODIFIED | Date (and time) file was last modified according to directory metadata | EDOCS |
| 21 | HASH | The hash value or "de-duplication key" assigned to a document. Parties will use MD5 Hash value for this unique identifier. PID's for e-mail families should also be preserved. | E-MAIL/EDOCS |
| 22 | DUPLICATE CUSTODIAN OR ALL CUSTODIAN | List of custodians who had this document, when documents are de-duplicated ACROSS custodians. Deliver in LASTNAME, FIRSTNAME format, with semicolons separating multiple entries. This will require an overlay for previous deliverables, as needed, when new custodians' data is processed and duplicated against the original set. | E-MAIL/EDOCS |
| 23 | PROTECTIVEORDER | The protective order designation (if any) assigned to the document | ALL |

## D. SEARCHING OF E-MAILS

General ESI production requests under Federal Rules of Civil Procedure 34 and 45, shall not include e-mail or other forms of electronic correspondence (collectively "e-mail"). The parties only have an obligation to search for and produce e-mails pursuant to the following protocol. However, to the extent that non-privileged e-mails are located (other than through the following protocol) that are responsive to production requests, such e-mails shall not be withheld. The e-

Case 1:20-cv-08180-CM Document 45 Filed 06/09/21 Page 7 of 17
Case 1:20-cv-08180-CM Document 43-3 Filed 06/04/21 Page 7 of 10

mail files of each individual who can reasonably be identified as likely having responsive information related to the proceeding shall be requested and searched as set forth below. The parties may jointly agree to deadlines set below without the Court's leave.

1. **Exchange of List of Search Terms.** Within five (5) business days after the entry of this stipulated order, a party seeking E-mail Discovery shall serve on the other party: (1) a list of no more than fifteen (15) proposed terms for searching e-mails, and the time frame that the search covers; and (2) a description of the type of custodians (e.g., job description, title, etc.) that the party serving the search terms seeks e-mails from. The search terms shall be narrowly tailored to particular issues. Indiscriminate search terms, such as the producing company's name or house brand are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. The parties may jointly agree to modify the limits on the number of custodians and search terms without the Court's leave.

2. **List of Identifying Custodians.** Within five (5) business days after the exchange of the list of search terms and description of type of custodians, the parties will exchange lists identifying custodians that may have relevant e-mails corresponding to the search terms for E-mail Discovery, the reason(s) each custodian is being listed, and the title of such custodian.

3. **Selection of Custodians.** Within three (3) business days following the exchange of custodian lists pursuant to ¶ D(2), the party who has served search terms will select no more than six custodians from the list of custodians provided in ¶ D(2). Each party shall then run a

6

search for responsive e-mails for each custodian using no more than fifteen (15) search terms selected by the requesting party.

4. **Production of Reports.** Within seven (7) business days after the custodians are selected per ¶ D(3), the party running such searches shall serve a written report detailing the number of hits for each search term run for each custodian. If a party running the search reasonably deems the number of hits for any particular search term to be excessive (and therefore unduly burdensome to review), the party running the search shall advise the requesting party concurrently with service of the report. The parties shall meet and confer within five (5) business days thereafter to narrow that search term to reduce its hits to a more manageable number. If agreement is not reached, the party running the search must timely apply to the Court for a protective order pursuant to Rule 26 of the Federal Rules of Civil Procedure. With regard to search terms for which there is no objection, the parties shall then meet, confer, and agree on a final list of search terms to be searched by each party (inclusive, if necessary, of additional search report generation/exchanges using modified search terms negotiated pursuant aforementioned conference). The parties may jointly agree to modify the limits on the number of search terms without the Court's leave. If no agreement is timely reached, a party can apply to the Court for relief.

5. **Production of E-mails.** Once agreement is reached as to the final list of search terms pursuant to ¶ D(3) above, the parties shall meet and confer regarding a production timetable for all non-privileged e-mails that are responsive to the search terms for each identified custodian.

6. **Additional Custodians.** If a party can show good cause for needing to search additional custodians, or for utilizing additional search terms for one or more custodians, the parties shall meet and confer in good faith to negotiate comparable procedures for searching e-mails for a reasonable number of additional custodians. The parties shall make good faith efforts

to meet and confer within five (5) business days of the producing party making this request to the receiving party.

**F.   DUPLICATES**

The parties may remove duplicative ESI to reduce the unnecessary cost of reviewing and producing duplicative ESI. The term "duplicates" does not include the same document having additional notations or markings on it. The term "duplicates" also does not include the same document possessed by each Party.

**G.   PRIVILEGED COMMUNICATIONS**

Each party will review all documents, including ESI, for privileged information prior to production. Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of privileged communications or work product in any form, including ESI, is not a waiver in the pending case or in any other federal or state proceeding.

Documents that are withheld or produced in redacted form on privilege grounds will be identified in a privilege log within 30 days after making a document production from which documents are withheld. The parties agree that any communications and documents that are privileged or protected as work product that are generated after the original March 3, 2020 filing of the New York State Court Action, *Wagner v. PRF*, No. 152329/2020 do not need to be included on a privilege log.

This space intentionally left blank.

**UPON CONSENT OF THE PARTIES:**

LEASON ELLIS LLP

/s/ Cameron S. Reuber
Cameron S. Reuber
Lauren Emerson
One Barker Avenue, Fifth Floor
White Plains, NY 10601
Tel: (914) 288-0022
Email: Reuber@leasonellis.com
Email: Emerson@leasonellis.com

*Attorneys for Plaintiff
Paul Rudolph Foundation*

SO ORDERED.

COLLEN IP

/s/ Jeffrey A. Lindenbaum
Jeffrey A. Lindenbaum
The Holyoke-Manhattan Building
80 South Highland Avenue
Ossining, NY 10562
914-941-5668
jlindenbaum@collenip.com

*Attorney for Defendants*

_____
Hon. Colleen McMahon
United States District Judge    6/9/21

# EXHIBIT B

# EXHIBIT B

# Jeffrey Lindenbaum

| | |
|---|---|
| **From:** | Jeffrey Lindenbaum |
| **Sent:** | Wednesday, May 26, 2021 6:30 PM |
| **To:** | Cameron Reuber; Cristin E. Carr |
| **Cc:** | Barbara Hoffman; Lauren B. Emerson; Lori Cooper; LeLitPara |
| **Subject:** | RE: Rudolph - Initial Disclosures |
| **Attachments:** | Draft ESI Order 5-26-21.docx |

Cameron,

My edits on the ESI Order are red-lined in the attached.

Please send me your proposal for modifying the case management plan.

Regards,
Jeff

---

**From:** Cameron Reuber <Reuber@leasonellis.com>
**Sent:** Wednesday, May 26, 2021 1:46 PM
**To:** Jeffrey Lindenbaum <jlindenbaum@collenip.com>; Cristin E. Carr <carr@leasonellis.com>
**Cc:** Barbara Hoffman <artlaw@hoffmanlaw.org>; Lauren B. Emerson <emerson@leasonellis.com>; Lori Cooper <Cooper@leasonellis.com>; LeLitPara <lelitpara@leasonellis.com>
**Subject:** RE: Rudolph - Initial Disclosures

Jeff:

Please advise.  As I indicated during our call, we will be asking the court to revise the case management plan before the end of this week.  We prefer that endeavor be a joint one, but are prepared to go it alone, if necessary.

Thanks,

**Cameron S. Reuber**
**LEASON ELLIS LLP**
**T** 914.821.3075
Biography | Website | vCard | LinkedIn

---

**From:** Cameron Reuber
**Sent:** Friday, May 21, 2021 5:52 PM
**To:** 'Jeffrey Lindenbaum' <jlindenbaum@collenip.com>; Cristin E. Carr <carr@leasonellis.com>
**Cc:** Barbara Hoffman <artlaw@hoffmanlaw.org>; Lauren B. Emerson <Emerson@leasonellis.com>; Lori Cooper <Cooper@leasonellis.com>; LeLitPara <lelitpara@leasonellis.com>
**Subject:** RE: Rudolph - Initial Disclosures

Jeff:

Thanks for the call today.  Per the same and the below, revised drafts are attached.

Please let me know as early as possible next week as to where we stand regarding the outstanding issues discussed today, inclusive of your availability to further meet and confer, if necessary to fully/finally resolve.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
PAUL RUDOLPH FOUNDATION, INC.,

                Plaintiff,

          -against-              Docket No. 20 Civ. 8180 (CM)

PAUL RUDOLPH HERTIAGE FOUNDATION and
ERNST WAGNER,

                Defendants.
---------------------------------------------------------------X

## STIPULATED ORDER RE: ELECTRONIC DISCOVERY PROTOCOL

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

**A.**     **SCOPE OF E-DISCOVERY**

Each party will conduct a diligent search of those reasonably accessible sources in which it has reason to believe relevant ESI responsive to the opposing party's discovery requests will be found. Reasonably accessible sources of ESI include personal computer hard drives, shared network drives and cloud-based storage services.

**B.**     **EXCLUSIONS**

The parties agree that Fed. R. Civ. P. 26(b)(2)(B) shall apply to the production of ESI in this case. In accordance with Fed. R. Civ. P. 26(b)(2)(B), the following types of ESI need not be reviewed under this Protocol unless specifically identified by a discovery request:

1. Voicemail.
2. Text messages and instant messages.
3. Logs of calls made from a mobile device.
4. Video and audio recordings stored only on a mobile device.
5. Residual, deleted, fragmented, damaged, or temporary data (*e.g.*, data stored in a computer's RAM).
6. Encrypted data/password protected files, where the key or password cannot be ascertained after reasonable efforts.

files of each individual who can reasonably be identified as likely having responsive information related to the proceeding shall be requested and searched as set forth below.

1. **Exchange of List of Search Terms.**  Within five (5) business days after the entry of this stipulated order, a party seeking E-mail Discovery shall serve on the other party: (1) a list of no more than fifteen (15) proposed terms for searching e-mails, and the time frame that the search covers; and (2) a description of the type of custodians (e.g., job description, title, etc.) that the party serving the search terms seeks e-mails from.  The search terms shall be narrowly tailored to particular issues.  Indiscriminate search terms, such as the producing company's name or house brand are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction.  A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term.  A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.  The parties may jointly agree to modify the limits on the number of custodians and search terms without the Court's leave.

2. **List of Identifying Custodians.**  Within five (5) business days after the exchange of the list of search terms and description of type of custodians, the parties will exchange lists identifying custodians that may have relevant e-mails corresponding to the search terms for E-mail Discovery, the reason(s) each custodian is being listed, and the title of such custodian.

3. **Selection of Custodians.**  Within three (3) business days following the exchange of custodian lists pursuant to ¶ D(2), the party who has served search terms will select no more than six custodians from the list of custodians provided in ¶ D(2).  Each party shall then run a

search for responsive e-mails for each custodian using no more than fifteen (15) the search terms. agreed upon in ¶ D(1).

3.4. **Production of Reports**. Within seven (7) three (3) business days after the custodians are selected per to ¶ D(3), the party running such searches shall serve a written report detailing the number of hits for each search term run for each custodian. If a party running the search reasonably deems the number of hits for any particular search term to be excessive (and therefore unduly burdensome to review), the parties shall meet and confer within five (5) business days to narrow that search term to reduce its hits to a more manageable number. If agreement is not reached, the party running the search must timely apply to the Court for a protective order pursuant to Rule 26 of the Federal Rules of Civil Procedure. Within five (5) business days, tTThe parties shall then meet, confer, and agree on a final list of search terms to be searched by each party (inclusive, if necessary, of additional search report generation/exchanges using modified search terms negotiated pursuant aforementioned conference). The parties may jointly agree to modify the limits on the number of search terms without the Court's leave. If no agreement is timely reached, a party can apply to the Court for relief. If a party running the search reasonably deems the number of hits for any particular search term to be excessive (and therefore unduly burdensome to review), the parties shall meet and confer to narrow that search term to reduce its hits to a more manageable number. If agreement is not reached, the party running the search must timely apply to the Court for a protective order pursuant to Rule 26 of the Federal Rules of Civil Procedure.

4.5. **Production of E-mails.** Once agreement is reached as to the final list of search terms pursuant to ¶ D(3) above, the parties shall meet and confer regarding a production timetable for all non-privileged e-mails that are responsive to the search terms for each identified custodian.

# EXHIBIT C

# EXHIBIT C

| **Defendants' Requested Keywords** | **Plaintiff's Requested Keywords** |
|---|---|
| 1.   PRHF or Heritage | 1.   Estate |
| 2.   Shuey | 2.   Judith |
| 3.   Judith | 3.   Jyorknew! |
| 4.   Estate | 4.   Copyright! |
| 5.   Copyrigh! | 5.   Regist! |
| 6.   Trademark | 6.   "Intellectual property" or IP |
| 7.   Modulightor | 7.   Licens! |
| 8.   LOC or Library | 8.   Infring! |
| 9.   Ernst or EW or Wagner | 9.   Library or LOC |
| 10.  Donat! | 10.  Server |
| 11.  Minutes | 11.  Aenishanslin or Aenishänslin or Aenishaenslin |
| 12.  IGstonewood | 12.  George or Geo or GB or Balle |
| 13.  Aenishanslin or Aenishänslin or Aenishaenslin | 13.  Sean or SK or Khorsandi |
| 14.  Ed or Turen | 14.  Dan or DW or Webre or Weber |
| 15.  Viju or Joseph | 15.  PRF or "Rudolph Foundation!" |