

INTELLECTUAL PROPERTY LAW

September 3, 2021
**Via ECF**
The Honorable Sarah L. Cave
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

                        Re:    *Paul Rudolph Foundation v. Paul Rudolph Heritage Foundation*
                                  Case No.: 1:20-cv-8180-CM (SDNY)

Dear Judge Cave:

       We represent the Defendants and respectfully submit this letter in response to Plaintiff's August 31, 2021 letter which asks the Court to resolve a dispute between the parties regarding setting a cap on the number of emails to be exchanged under the ESI Protocol.

       To begin with, it is a refreshing development to see Plaintiff change course and finally acknowledge that its lawsuit is directed against a 78-year old recent stroke victim and a very small non-profit entity, and that the standards of proportionality and FRCP 1 should limit the scope and costs of this matter. Defendants could not agree more. That being said, Plaintiff's 310-paragraph complaint, and nine causes of action entitle Defendants to seek reasonable discovery in order to defend these allegations. Plaintiff cannot spend months inflating the scale of its case, only to retreat as soon as Discovery places its first burdens back on Plaintiff.

       Plaintiff's letter mischaracterizes Defendants' position and its willingness to find a compromise to resolve this dispute. Plaintiff's letter states: "[t]his latest dispute concerns defense counsel's **steadfast insistence** that Plaintiff review and produce at least 35,000 emails." This is false. Defendants have not insisted on anything, nor were they even given an opportunity to insist on anything. This is because Plaintiff sent its letter to the Court at 5:25pm, only five minutes after sending an email to Defendants at 5:20pm advising Defendants' counsel that the 35,000 proposal was unacceptable and that Plaintiff was unilaterally ending the discussion.

       Plaintiff's approach overlooks that the entire foundation of the ESI Protocol (and ESI discovery in general) is that it requires the parties to cooperate and make compromises. Recall, this is the second dispute in which Plaintiff has taken an "it's my way or no way" approach to interpretating the ESI Protocol. During the last hearing, the Court had to remind Plaintiff that this is an iterative process, rejecting Plaintiff's uncompromising position.

       Since the last hearing, the Parties have completed several of the ESI Protocol steps. After identifying relevant custodians and exchanging keyword lists, Plaintiff's keywords generated a hit count of approximately 30,000 emails and Defendants' list generated approximately 116,000 emails. To reduce the volume of the 116,000 emails, Defendants' first proposal was that it would

narrow the scope of searching for any keyword that generated over 5,000 emails. Plaintiff rejected this proposal. After some further communications, Plaintiff then proposed that there should be a single cap for all emails, and proposed a total of 5,000. Defendants readily accepted part of Plaintiff's proposal to set a single cap of all emails, but as to the appropriate number of hits, Defendants proposed that the cap be 35,000. Defendants explained that with a 35,000 cap, Plaintiff would not have to narrow its keywords at all, and Defendants would substantially narrow their keywords to reduce the hit count from 116,000 to 35,000. Defendants asked Plaintiff, "[p]lease let us know if this is acceptable." It was at this point, as discussed above, that Plaintiff abruptly rejected this proposal, summarily terminated further discussion, and immediately sent its letter to the Court. Plaintiff offered no further compromise, instead resorting back to its unnecessary personal attacks at counsel (arguing bad faith, etc.).

The ESI Protocol does not set a limit on the number of emails to be exchanged by the parties. Likewise, there is no clear body of caselaw that sets any bright line limits. There are many published cases in this Circuit where the parties have exchanged tens of thousands of emails, and hundreds of thousands of emails. *SEC v. Ripple Labs, Inc.*, 2021 WL 1814771, at *1 (S.D.N.Y. May 6, 2021)(tens of thousands of emails); *Moore v. Publicis Groupe*, 287 F.R.D. 182, 189 (S.D.N.Y. 2012)(tens of thousands of emails); *United States v. Morgan*, 493 F. Supp. 3d 171, 192–93 (W.D.N.Y. 2020)(hundreds of thousands of emails). In a recent but unrelated case litigated by the undersigned before Judge Caproni, using the same ESI Protocol form used in this case, some keywords were narrowed, but ultimately emails exceeding 25,000 were produced.

In this case, Plaintiff has demanded an arbitrary and unrealistic cap of only 5,000 emails and has not offered any compromise on this number. In pushing for this restriction, Plaintiff asks the Court to be guided by the ESI limits proposed by Judge Schofield in her Individual Rules. Judge Schofield's Rules do not set a cap on the number of emails, but her Rules state that the process should take less than 160 hours. The parties never discussed or agreed upon adopting Judge Schofield's Rules for this case. Nevertheless, Defendants agree that given all of the circumstances of this case, there should be meaningful limits on discovery, and approximately 160 hours is a reasonable guidepost.

Just as an example, even were the parties to attempt to adhere to that standard, Plaintiff's numbers would not hold up. Plaintiff has suggested that it takes on average one minute to review an email. Defendants find this to be an unlikely number, in practice, as experience shows it would likely be less than one minute for every two emails, due to several factors, such as the ability to: (1) use keyword searches (such as the search for the name of counsel to review privilege); (2) sort by "to" and "from"; and (3) sort groups of spam, etc. Certainly some emails may take more than a minute to review, but large blocks of emails can almost always be reviewed on a much quicker pace. For example, employees often have a large volume of third party solicitations, subscriptions, spam, blog reports. These types of emails can be sorted and quickly reviewed in bulk.

Plaintiff also mistakenly maintains that the review process will be slowed by counsel having to make decisions as to responsiveness. But this is incorrect. The ESI Protocol has removed the burden of a responsiveness review, replacing that process with a focused keyword search. The Protocol states clearly that for the review and production of emails, the typical procedures under Rule 34 do not apply (D.E. 47 at ¶D) and that the Parties must produce "all non-

Hon. S. Cave
September 3, 2021
Page 3 of 3 – AX1060

privileged emails that are responsive to the search terms for each custodian." D.E. 47 at ¶D(5). Accordingly responsiveness is determined only by whether the email contains the selected search term, and not based on some earlier served discovery request. The Protocol removes counsel's subjective discretion to withhold emails on grounds of responsiveness and in turn alleviates this burden from the search process, allowing the emails to be reviewed, processed and produced more quickly.

Even applying Judge Schofield's protocol numbers that Plaintiff cites, Plaintiff could produce far more than 5000 emails. In fact, it would produce at least 9,600 emails (at Plaintiff's proposed one minute per email rate) and 19,200 emails (at a calculation of – on *average* – two emails per minute). Plaintiff's position is unreasonable and clearly not designed to compromise but rather to put a stake in the ground in order to put a harsh limit on Defendant's ability to conduct necessary discovery. To resolve this dispute, Defendants have already cut their demand by two-thirds. Plaintiff has not moved its position at all. This is the Plaintiff's case in which it elected to assert nine separate causes of action, including claims for trademark and copyright infringement, directed to conduct and events occurring over twenty years.[1] Defendants respectively request that the Court endorse Defendants' proposed compromise of a 35,000 cap for both parties' emails.

Thank you for your consideration.

                                                        Very truly yours,
                                                        COLLEN IP
                                                        s/ Jeffrey A. Lindenbaum
                                                        Jeffrey A. Lindenbaum
                                                        jlindenbaum@collenip.com

cc: Counsel of Record (Via ECF)

---

[1] Plaintiff requested Defendants produce emails from 1997 to 2020.