

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _9/8/2022_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE PAUL RUDOLPH FOUNDATION,

                          Plaintiff,

     -against-

PAUL RUDOLPH HERITAGE FOUNDATION
and ERNST WAGNER,

                          Defendants.

No. 20 Civ. 8180 (CM)

**MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS
DEFENDANTS' COUNTERCLAIM AND GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION TO STRIKE**

McMahon, J.:

Plaintiff, the Paul Rudolph Foundation ("PRF") is a non-profit organization that was founded to preserve the legacy of modern architect Paul Rudolph and to educate others in the field of architecture. Defendant Ernst Wagner was one of the founding members of Plaintiff PRF; he was voted off PRF's board of directors in 2014. Wagner thereafter founded Defendant Paul Rudolph Heritage Foundation ("Heritage") (together with Wagner, "Defendants").

PRF claims that Heritage is nothing more than a copycat organization founded by Wagner to impede PRF's efforts to function without him. Plaintiff brings this seven-count action against Defendants for trademark infringement, willful copyright infringement, and related common law claims. Plaintiff also seeks a declaration that certain images of Rudolph's work that were transferred to the Paul M. Rudolph Archive at the Library of Congress (and the intellectual property rights to those images dedicated to the public) are in the public domain, and that Defendants' copyright registration purporting to cover those images is therefore invalid.

1

Defendants assert one counterclaim for copyright infringement and thirteen affirmative defenses to Plaintiff's claims.[1]

Presently before the court is Plaintiff's motion to dismiss the counterclaim and to strike certain of the affirmative defenses asserted by Defendants.  The motion to dismiss is granted and the motion to strike is granted in part and denied in part.

## BACKGROUND

### A.  Relevant Factual Background

For a fulsome recitation of the facts as alleged in Plaintiff's Amended Complaint (later superseded by the Second Amended Complaint, Docket No. 67), please refer to the court's September 30, 2021, Memorandum and Order Granting in Part and Denying in Part Defendants' Motion to Dismiss the Amended Complaint. (Docket No. 66).  The following facts relevant to the pending motions are taken from Defendants' Amended Answer and Counterclaim, filed November 17, 2021 ("Counterclaim") (Docket No. 86) and Plaintiff's Second Amended Complaint filed October 12, 2021 ("SAC") (Docket No. 67).

### 1.  The Disposition of Rudolph's Estate and the Rudolph Archive.

On September 30, 1996, Rudolph executed a will (the "96 Will"), which named his attorney John Newhouse as his executor. (SAC ¶ 12.) Pursuant to the 96 Will, a $2,000,000 testamentary trust was established for the benefit of Wagner, Rudolph's longtime friend. The trust was to be funded by the sale of certain real property at 23 Beekman Place in Manhattan. (SAC ¶ 13.)

In the 96 Will Rudolph bequeathed the physical copies of his drawings, plans, renderings, blueprints, models, papers, treatises, and other materials related to his architectural practice (the

---

[1] For clarity, the court refers to Wagner and Heritage is "Defendants" consistently throughout this opinion instead of "Counterclaim-Plaintiffs."

"Rudolph Archive") to the Library of Congress. There was no mention of any disposition of the intellectual property in those materials in the 96 Will, but Wagner was named as the residuary beneficiary under the 96 Will.

On March 17, 1997, Rudolph suffered a heart attack and went into a coma.  On April 16, 1997, after Rudolph awoke from the coma, he executed a new will (the "97 Will"), pursuant to which Rudolph bequeathed to Wagner $1,000,000 outright, as opposed to $2,000,000 in trust. (SAC ¶¶ 19-20). The 97 Will also provided for the outright transfer to Wagner of a piece of property on West 58th Street that Rudolph owned. (*Id*.).

In the '97 Will, as in its predecessor, Rudolph bequeathed his Archive to the Library of Congress. (Id.). And, like its predecessor, the 97 Will said nothing about the intellectual property rights appurtenant to the physical items in the Archive.  (*Id*. ¶ 21).

Because both the 96 Will and the 97 Will say nothing about the disposition of Rudolph's intellectual property, had either been submitted for probate as written, the intellectual property would have likely been disposed of as "residue." (*Id*. ¶ 22).

In July of 1997, Rudolph's sister and his office manager instituted an Article 81 guardianship proceeding alleging that Wagner had induced Rudolph to amend his will in 1997 to Wagner's benefit.  (SAC ¶ 25).  Rudolph died before the hearing took place, and the '97 Will was submitted for probate. (*Id*. ¶¶ 26, 28).

In its Second Amended Complaint, Plaintiff alleges that Newhouse (Rudolph's attorney) sought leave to file objections to the '97 Will (SAC ¶ 29) and that a Court-appointed Evaluator questioned whether Rudolph had the mental capacity to execute documents during the period when the '97 Will was signed (SAC ¶ 27). Defendants dispute those allegations.

On June 6, 2001, Wagner, Wagner's attorney Heckman, Newhouse, and the LOCTFB resolved the probate challenges by entering into a stipulation of settlement ("Stipulation of Settlement"), and by modifying the terms of the 97 Will.  (SAC 3¶ 1; Counterclaim ¶ 17). This "Reformed Will" is the will that was eventually probated.

In relevant part:

Article THIRD provides for a bequest of certain tangible property to Wagner. Excluded from that property in the Reformed Will is the following:

> Currency and any and all drawings, plans, renderings, blueprints, models, papers, treatises, and other materials that I prepared or had prepared in connection with my professional practice of architecture which is hereinafter specifically disposed of in Article FOURTH hereof.

Article FOURTH of the Reformed Will bequeaths all such materials to the LOCTFB. With respect to that bequest, the Stipulation of Settlement provides as follows:

> In furtherance of fulfilling the wishes of Paul M. Rudolph as set forth in Article FOURTH of the Reformed 1997 Will, the LOC Trust Fund Board shall transfer to the Library of Congress those items among the Architectural Archives and among the items set forth in Paragraph 5 below that the Library of Congress determines are suitable for its collections. The intellectual property rights of all such items transferred to the Library of Congress shall be dedicated to the public.

Defendants allege in their counterclaim that "Wagner, as the residuary beneficiary of the Estate, inherited all intellectual property rights and, as the executor, owns the inalienable statutory right of termination under the Copyright Act." (Counterclaim ¶ 18).  Plaintiff PRF maintains that the phrase "The intellectual property rights of all such items transferred to the Library of Congress shall be dedicated to the public," means that the Estate voluntarily and irrevocably abandoned Rudolph's intellectual property rights in the 20,000 or so works from the Rudolph Archive which were donated to the Library of Congress and became part of the public domain.  (SAC ¶¶ 36-40).

2. <u>PRF and Heritage</u>

In June of 2001, Wagner founded Plaintiff – the Paul Rudolph Foundation (aka PRF) – to preserve and share Rudolph's architectural legacy.  (Counterclaim ¶ 8).  Defendants plead that, "Despite being the sole founder of PRF and the residuary beneficiary of Rudolph's estate, [Defendant] Wagner did not insist on having exclusive control of PRF, and selflessly shared power among the board members." (*Id*. ¶ 9).  PRF operated out of the West 58 Street property that was transferred to Wagner in the Reformed Will; that property was designed by Rudolph and is referred to by the parties as the "Modulightor Building." (*Id*. ¶ 10).

In 2014, PRF's board members voted to remove Wagner from the board.  (Counterclaim ¶12).  Upon removal from PRF's board, Wagner founded Heritage in 2015 to continue preserving and sharing Rudolph's legacy.  (*Id*. ¶ 14).  According to Plaintiff, in reality, Wagner founded Heritage to compete with and harass PRF.  (*See* SAC at page 2).

Plaintiff alleges that, prior to the founding of Heritage, PRF operated as the sole charitable organization chartered to further the knowledge, understanding, and preservation of the work of Paul Rudolph as well to promote dialog and greater public understanding of architecture.  (SAC ¶ 41).  In furtherance of its objective, PRF has worked closely with the LOC to digitize the Rudolph Archive so that the materials contained therein can be made available and readily accessible to those who wish to view them for educational and research purposes.  (SAC ¶ 45).  For example, in in October of 2018, Plaintiff co-sponsored the Paul Rudolph Centenary Symposium in conjunction with the Library of Congress in honor of what would have been Paul Rudolph's 100th birthday.  (*Id*. ¶ 46).

3. <u>The '158 Registration and PRF's Purported Copyright Infringement.</u>

Defendants plead that on November 13, 2019, Kelvin Dickson – the President of Heritage – registered with the U.S. Copyright Office "152 unpublished photographs from the Paul Rudolph Architectural Archives."  (*See* Docket No. 86, Exhibit E, certification of registration from the U.S. Copyright Office Registration No. VAU001380158) (the "'158 Registration").  (Docket No. 86, ¶ 50).  Defendants assert that the '158 Registration covers "152 unpublished photographs" created as "work for hire" that were *not* among those selected by the Library of Congress.  Defendants' argument is that Wagner, as the residuary beneficiary of the Revised Will, inherited all material prepared (and the intellectual property rights to that material) by Rudolph in connection with his professional practice of architecture, other than for the materials "selected" by the LOC pursuant to the Stipulation of Settlement.  The '158 Registration purportedly memorializes Wagner's copyrights to 152 unpublished "work-for-hire" images from the Rudolph Archive that were not selected by the LOC.

In direct contradiction to their allegation that the deposit materials submitted with Defendants' copyright registration application a collection of "unpublished" images, Defendants plead in their counterclaim that 3 of the 152 photographs have in fact been published in "Paul Rudolph: the Late Work," a book by Roberto de Alba.[2]  (Counterclaim, ¶ 55).  In relevant part, Defendants' Counterclaim states:

The only published photographs accompanying the application were as follows:

a. 1968.07-02.03.0017 - published in 'Paul Rudolph: The Late Work' by Roberto de Alba on page 45
b. 1972.01-02.03.0036 - published in 'Paul Rudolph: The Late Work' by Roberto de Alba on page 65. Photo by Donalad Luckenbill, a Rudolph employee.

---

[2] De Alba's book was published in May 2003, 16 years before Defendants filed for a certification of registration in 2019.

     c. 1972.01-02.03.0033 - published in 'Paul Rudolph: The Late Work' by Roberto de Alba on page 67. Photo by Donalad Luckenbill, a Rudolph employee.

Counterclaim, ¶ 55.

According to Paragraph 55 of the Counterclaim, at least 2 of the 152 images registered by Defendants were taken not by Rudolph himself, but by a Rudolph employee named "Donalad[3] Luckenbill." (*Id*.). That at least two of the images registered were taken by someone other than Rudolph contradicts Defendants' own pleading that "the deposit materials accompanying the application contain previously unpublished photos taken by Rudolph," and, "upon information and belief, photographs that Rudolph took during a family trip." (Counterclaim ¶ 54).

Defendants allege that, "Upon information and belief, none of the deposit materials were ever transferred to the LOC and are not part of the LOC Paul Rudolph collection." (Counterclaim ¶ 57). Moreover, the "deposit materials with the copyright registration are available as public records on the Copyright Office Website and can be verified by Plaintiff." (*Id*. ¶ 58).

Notwithstanding their copyright registration, Defendants allege that, "After the date of registration of the above-identified copyrights and continuing to date, [Plaintiff] has infringed and on information and belief intends to continue to infringe the copyrights in [Heritage's '158 Registration] by publishing, displaying, distributing, selling, and/or offering for sale, without [Defendants'] permission or consent, copies, reproductions, and derivative works of [Defendants'] copyrighted images." (Counterclaim ¶ 60).

Defendants attach two "examples" of Plaintiff's "infringing uses as of November 11, 2021," without specifying what images were used and in what ways. (*Id*.). The court notes that images posted by PRF on or before November 11, 2021, predate Defendants' November 13, 2019,

---

[3] The court presumes Defendants mean "Donald" and not "Donalad" – this is just one of the many examples of Defendants' failure to proofread their pleading.

registration of 152 images with the U.S. Copyright Office.  Defendants concede that PRF's Instagram account has been disabled and thus "no longer infringes" on Defendants' copyrights. But "Infringing images continue o[n] their Facebook account and the website as of the filing." (Counterclaim ¶ 61). Defendants do not allege what images are improperly posted on PRF's Facebook and website, nor do they identify the corresponding registration numbers to demonstrate that those images are registered by Defendants with the U.S. Copyright Office.

Finally, without including any facts to back such an allegation up, Defendants assert that "Upon information and belief, said conduct by [Plaintiff] was and is willfully done with knowledge of [Defendants'] copyrights" in the images at issue.  (*Id*. ¶ 62).

## B. Procedural History

On September 30, 2021, the court granted in part and denied in part Defendants' motion to dismiss the first amended complaint. (*See* Docket No. 66, Memorandum and Order Granting in Part and Denying in Part Defendants' Motion to Dismiss) (the "Order on the Motion to Dismiss"). The court dismissed PRF's false advertising claim *with* prejudice.  The court dismissed PRF's Declaratory Judgment Act ("DJA") claim with leave to plead a concrete intention to use the photographs they claim were improperly registered by Defendants with the U.S. Copyright Office. Finally, the court dismissed Plaintiff's Computer Fraud and Abuse Act ("CFAA") claim with leave to allege a security breach and at least $5,000 in damages flowing from an investigation into that security breach in order to state a claim pursuant to the CFAA.

On October 12, 2021, Plaintiff filed the Second Amended Complaint ("SAC"), which is the operative pleading in this action. (*See* Docket No. 67)  Plaintiff seeks relief from, inter alia, the various and persistent harassment by Defendants in the form of willful trademark and copyright infringement, unfair competition, use of Plaintiff's business files to compete against Plaintiff, and

any other relief the court deems just and proper so that PRF may proceed with its mission without fear of further bad faith disruption and harassment by Defendants. (*See* SAC at page 2).  For a summary of the facts underlying Plaintiff's claims, the reader is directed to the court's decision on the motion to dismiss. (Docket No. 66).  The facts relevant to both Plaintiff's case and Defendants' counterclaim have to do with Defendants' '158 Registration and the images materials purportedly selected by the LOC for inclusion in their Paul Rudolph Collection, described above (*see supra*, Section A.3).

On November 11, 2021, Defendants answered the SAC and asserted thirteen affirmative defenses and one counterclaim for copyright infringement against PRF.  (Docket No. 82).  Six days later on November 17, 2021, Defendants filed an amended answer to the SAC.  (Docket No. 86).  The amended answer also included thirteen affirmative defenses and one counterclaim for copyright infringement.  (*Id*.).  For the purpose of this opinion, the amended counterclaim is referred to as the "Counterclaim."

On December 2, 2021, PRF moved to strike Defendants' Amended Affirmative Defenses to the dismiss the Amended Counterclaim.  (Docket No. 89).  But the court stayed briefing on PRF's motion and discovery in this case and ordered that the parties engage in a good faith effort to mediate this case under the supervision of Magistrate Judge Cave.  (*See* Docket Nos. 84, 93).

In August of this year Magistrate Judge Cave advised the court that the mediation in this case had ended unsuccessfully.  Accordingly, the court lifted the stay of the proceedings and ordered that the parties complete discovery by December 7, 2022, that Defendants file their opposition to PRF's motion to dismiss Defendants' counterclaim by August 19, and that PRF file its reply in support of its motion by August 24.  (Docket No. 94).

PRF's motion to dismiss the counterclaim and motion to strike Defendants' affirmative defenses are now fully briefed and pending before the court.

## LEGAL STANDARDS

1. <u>12(b)(6) Motion to Dismiss</u>

A motion to dismiss counterclaims is governed by the familiar standards of Rule 12(b)(6). Counterclaims will survive a motion to dismiss as long as they contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Claimants must do more, however, than merely attach "labels and conclusions" to bald factual assertions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

"To survive a motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sphere Digital, LLC v. Armstrong*, No. 20-cv-4313 (CM), 2020 WL 6064156, at *4 (S.D.N.Y. Oct. 14, 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  And "all reasonable inferences should be drawn in favor of the plaintiff," but the "complaint must contain sufficient allegations to nudge a claim 'across the line from conceivable to plausible.'" *Ibid.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated into the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).  The court may consider the full text of documents that are cited in, incorporated by reference in, or "integral" to the complaint. *San*

*Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 809 (2d Cir. 1996).

   2.   Motion to Strike

Under Rule 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

When assessing whether to strike an affirmative defense, district courts in this Circuit consider three factors. ***First***, the court must consider whether the affirmative defense satisfies the plausibility standard articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), recognizing that "applying the plausibility standard to any pleading is a 'context-specific' task." *GEOMC Co. v. Calmare Therapeutics Inc*., 918 F.3d 92, 97–98 (2d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  For "context," court should consider how long the defendant had to plead the affirmative defense, the facts available to the defendant, and the nature of the affirmative defenses (*e.g*., whether they are fact intensive).  *Id*. at 98.  ***Second***, the court must consider whether the movant has shown that "there is no question of law which might allow the defense to succeed," keeping in mind that "an affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *GEOMC Co*., 918 F.3d at 98.  And ***third***, court must assess the degree to which "the moving party ... is prejudiced by the inclusion of the defense," keeping in mind that, "A factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation." *Id*. at 98–99.

**DISCUSSION**

**I.   PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM IS GRANTED.**

Plaintiff moves to dismiss Defendants' amended copyright infringement counterclaim for failure to state a claim upon which relief may be granted.

To state a claim for copyright infringement, a plaintiff (or, in this case, a counterclaim plaintiff) must allege: (1) which specific original works are the subject of the copyright claim; (2) that plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts during what time the defendant infringed the copyright. *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36, n.3 (S.D.N.Y. 1992).

Plaintiff argues that Defendants' counterclaim for copyright infringement must be dismissed because – despite having over a year to prepare their answer to Plaintiff's complaint(s) – Defendants' copyright infringement counterclaim is riddled with deficiencies.

The court agrees.

Defendants fail to specify *which* works within a 152-photograph group copyright registration were used by PRF in violation of Defendants' copyrights, and they fail to plead *how* and *when* PRF infringed those copyrights. Defendants instead attach two "examples" of PRF's alleged infringing activity, both of which predate the date of registration (despite alleging "ongoing" infringement). One of Defendants' "examples" is PRF's posting of a photograph that is in the public domain – it is part of the Paul Rudolph Collection at the Library of Congress – which cannot constitute copyright infringement as a matter of law. Other facts pleaded in the complaint give rise to an inference that Defendants do not own the copyright in the second "example" image.

1. **Defendants plead only two instances of copyright infringement in their counterclaim.**

I begin by noting that Defendants, despite their sweeping pleading, have identified only two arguable instances of copyright infringement.

Defendants allege that PRF "has infringed and on information and belief intends to continue to infringe the copyrights in [the '158 Registration]" and attach two "examples of PRF's infringing uses as of November 11, 2021, 2021. … as Exhibits G and H." (Counterclaim, ¶ 60). Exhibit G appears to be a screen grab of a post on PRF's Facebook page featuring a photo of the "Parcells Residence" in Grosse Pointe, MI.  (*See* Docket No. 86-7) (the "Parcells Residence image").  Exhibit H appears to be a screen grab of a post on PRF's Facebook page which includes an image of  "Green Residence (1969) emerging from a Pennsylvania field," which allegedly "held special significance for Rudolph." (Docket No. 86-8) (the "Green Residence image").  Defendants do not identify in their complaint any other images that were infringed or any other instances when Plaintiffs made use of any of the 152 works that were the subject of the '158 registration.

By failing to specify the works that were infringed, or where, when, and how the infringement occurred, Defendants have failed to plead any instance of copyright infringement aside from the two identified in the preceding paragraph.

When pleading a claim of copyright infringement a plaintiff must plead which specific original works are the subject of the copyright claim.  *Kelly*, 145 F.R.D. at 36. The law requires a plaintiff (in this case, the counterclaim plaintiff) to identify each instance of infringement with specificity; it is not sufficient for a plaintiff to list "examples" of works that were allegedly infringed and then claim that other, unidentified works were also infringed. *Cole v. John Wiley & Sons, Inc*., No. 11 CIV. 2090 DF, 2012 WL 3133520, at *12 (S.D.N.Y. Aug. 1, 2012).  Such  a pleading fails to give the (counterclaim) defendant notice of how it purportedly violated the law.

For example, in *Palmer Kane LLC v. Scholastic Corp.*, No. 12 CIV. 3890 TPG, 2014 WL 1303135, at *3 (S.D.N.Y. Mar. 31, 2014), the court dismissed the plaintiff's copyright claim because plaintiff failed to sufficiently plead exactly *which* specific original photographs were the subject of plaintiff's claim; the complaint simply contained an allegedly non-exhaustive list of the photographs at issue.

Accordingly, the court rules that Defendants' copyright infringement counterclaim is limited to the two identified instances in which photos of the "Parcells Residence" and the "Green Residence" allegedly appeared on Plaintiff's platforms. (Exhibits G and H to Defendants' Counterclaim, Docket No. 86-7,8).

## 2. Defendants fail to plead ownership of the intellectual property rights to the image of the Parcells Residence; the counterclaim is dismissed as to that image.

The author of a work is the presumptive owner of the intellectual property rights to that work. The author can, of course, transfer ownership rights to physical works and intellectual property rights in those works to someone or something else. As the residuary beneficiary under Rudolph's Revised Will, Defendant Wagner inherited any intellectual property rights that Rudolph owned at the time of his death – other, of course, than the intellectual property rights attendant to the items that the LOC chose to keep for its archive.[4]  The parties do not disagree that Wagner does not own the works that the LOC chose to accept for its Paul Rudolph collection.  In their counterclaim, Defendants repeatedly assert that the images at issue – which, as discussed above,

---

[4] At this stage of litigation the court has no idea whether Rudolph transferred his copyrights in non-LOC works to persons other than Wagner who purchased or otherwise came into ownership of them. Nor, as we shall see, is it clear that Wagner succeeded to the copyright in all the items of tangible property that he inherited pursuant to the settlement of the will contest – because, per the facts alleged in the complaint, it is legally impossible for Rudolph to have owned the copyright in those of his works that qualify as "works for hire." But Wagner assuredly owns some of Rudolph's copyrights, which are a separate piece of property from the tangible items to which Wagner took title.

means the Parcells Residence and Green Residence photographs -- were not selected by the LOC to be featured in the PR Collection.

But as PRF points out,  the image of the Parcells Residence  *was* selected by the LOC and *is* in the public domain as part of the Paul Rudolph Collection. (Docket No. 91-2).

When considering a motion to dismiss, the court "may consider any . . . documents upon which the complaint relies, and which are integral to the complaint." *Subaru Distributors Corp. v. Subaru of America, Inc*., 425 F.3d 119, 122 (2d Cir. 2005).  Moreover, the court may consider documents that are referenced in the counterclaim, documents that are either in Defendants' possession or that Defendants knew of when they filed their counterclaim, and documents of which judicial notice may be taken.  *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir.2002).

Defendants' allegation that none of the photographs in the '158 registration were selected by the LOC is "integral" to its counterclaim, since the claim is for copyright infringement, and it is not possible to infringe the copyright in a work that has fallen into the public domain. Which images are in the Paul Rudolph Collection at the Library of Congress is a matter of public record, so a list of what the LOC owns is "integral" to the Counterclaim.  No such list is attached to the pleading, however.

Plaintiff has attached to its responsive papers documentation of the images that are owned and archived by the LOC. "Where public records that are integral to a [] complaint are not attached to it, the court, in considering a Rule 12(b)(6) motion, is permitted to take judicial notice of those records." *Roth v. Jennings*, 489 F. 3d 499, 509 (2d Cir. 2007).  One of the images listed in the public record provided by Plaintiff is the Parcells Residence image. (*See* Docket No. 91-2, Exhibit 2).  The court accordingly can take judicial notice that the Parcells Residence image was selected by the LOC. That makes Defendants' assertion – made, I should note, "upon information and

belief" – that "none of the [152 photographs it purportedly copyrighted]  were [sic] ever transferred to the LOC and are not part of the LOC Paul Rudolph Collection" demonstrably untrue. (Counterclaim, ¶ 57).[5]  The Parcells Image has passed into the public domain, by virtue of the fact that it is owned by the LOC.  As a matter of law, Defendants do not own the intellectual property rights to images that are in the public domain. *Dean v. Cameron*, 53 F. Supp. 3d 641, 646 (S.D.N.Y. 2014); *Computer Assocs. Int'l, Inc. v. Altai, Inc*., 982 F.2d 693, 710 (2d Cir.1992) ("material found in the public domain. . . is free for the taking and cannot be appropriated by a single author"). Defendants' effort to register a copyright in that image as part of the '158 registration did not confer a copyright and was totally ineffective.

Defendants assert that whether certain images (I assume including the Parcells photograph) that are among the 152 photographs that are  included in the '158 Registration "are the same images within the LOC collection" is a question of fact that cannot be answered at the motion to dismiss stage.  (*See* Defendants' Opposition, Docket No. 98 at 10). The only thing I can imagine is that Defendants believe there may be multiple images of the same item, not all of which were transferred to the LOC.  But Defendants do not allege that there are multiple images of the Parcells Residence. Nor do they plead any factual basis for believing that Defendants and the LOC each own *different* images of *any* of the same subject.

Finally, as noted above, Defendants' assertion that the LOC did not select any of the 152 photographs that were the subject of the '158 registration (including the Parcells Image) is pleaded on information and belief. Pleading on information and belief is inappropriate form of pleading if

---

[5] In fact, PRF contends that the rights to at least 20 of the photographs that Defendants registered with the U.S. Copyright Office were expressly dedicated to the public pursuant to the Stipulation of Settlement.  (*See* Docket No. 90 at 12).

the matter is within the personal knowledge of the pleader or "presumptively" within his knowledge. *Sanders v. Grenadier Realty, Inc*., 367 F. App'x 173, 175 (2d Cir. 2010).

Of utmost significance to this case, matters of public record are not to be alleged on information and belief. *Id*. There is no reason why Defendants' counsel could not have obtained a copy of the public record of what the LOC took for itself before asserting that the copyright in one of those images (1) belonged to it; and (2) had been infringed. Defendants could have taken simple steps to ascertain the status of the Parcells Image before adverting to it in their counterclaim – steps like visiting the Library of Congress in Washington, DC; checking the LOC digital catalog on its public web page;[6] or consulting with an LOC representative about the contents of the Paul Rudolph Collection.

Because it is a matter of public record that the LOC owns the Parcells Residence image, Defendants' asserted copyright in that photograph it is not worth the paper on which it is written. As a matter of law, the image is in the public domain, and no one owns any copyright in it. Therefore, to the extent that Defendants' counterclaim rests on Plaintiff's alleged publication of the Parcells Residence image, it must be dismissed.

### 3. Defendants fail to plead authorship of the Green Residence image; the counterclaim is dismissed in its entirety.[7]

Defendants' (inconsistent) allegations call into question the authorship of the materials that Plaintiff has allegedly posted in violation of Defendants' intellectual property rights.

At paragraph 50 of the counterclaim, Defendants plead that the 152 images covered by the '158 registration were not selected by the LOC because those images were created as "work for

---

[6] *See* https://catalog.loc.gov/, last visited Sept. 8, 2022.

[7] This argument applies equally to the Parcells Residence Image, but because that photograph is in the public domain it was easier to dismiss that aspect of the counterclaim on that ground.

hire." Paragraph 34 further pleads that the photographs identified in paragraph 50 as "works for hire" were "previously unpublished photographs taken by Rudolph." Taken together, the fair implication of these two pleaded facts is that Rudolph did not own the copyright in those 152 images. In fact, absent some agreement to the contrary[8] (and none is alleged), the copyright in a work for hire belongs, not to the creator of the work (Rudolph, who took the photographs), but to the person who hired Rudolph  to create the work (identity unknown, but ultimately irrelevant). Under the Copyright Act, the person who hired Rudolph to take the photographs as 'works for hire" became the "author" of those works, and so is the owner of the copyright in those works. *Urbont v. Sony Music Ent*., 831 F.3d 80, 85 (2d Cir. 2016).

It makes perfect sense that the LOC would not select "works for hire" for its collection. The LOC, a public entity, would have no interest in acquiring works if it could not place those works in the public domain and make them available to the public. It could not do that with "works for hire" precisely because Rudolph did not own the copyright in such works.

But if Rudolph did not own the copyright in those 152 works for hire, then he could not have passed any copyright in them to Wagner through his residuary estate, as alleged in the Counterclaim. The fair implication of paragraph 50's "work for hire" allegation, then, is that Wagner did not own and could not have owned the copyright in those 152 works (including the Green Residence Image) – that he wrongfully obtained a certificate of copyright in those works – because Rudolph himself did not own the copyright in those 152 images.

---

[8] To plead ownership over material created as work-for-hire, Defendants must allege: (1) the hiring party's right to control the manner and means of creation; (2) the skill required of the hired party; (3) the provision of employee benefits; (4) the tax treatment of the hired party; and (5) whether the hiring party has the right to assign additional projects to the hired party.  *Horror Inc. v. Miller*, 15 F.4th 232, 249 (2d Cir. 2021).  Plaintiff correctly points out that Defendants plead no facts bearing on any of these requirements.  So if any of the images at issue were created as work-for-hire, Defendants categorically fail to plead ownership of such images.

And if Wagner does not own the copyright in the Green Residence image, then he cannot sue for infringement of that image, because only the owner of the copyright can sue for infringement.  By pleading that the Green Residence image was one of 152 works for hire that were created by Rudolph for someone else, Defendants have pleaded themselves out of an infringement counterclaim.

Of course, the copyright registration itself – the '158 registration – asserts that the images were not "works for hire." (*See* Counterclaim, Exhibit F at page 3, Docket No. 86-6) (checking box "NO" for work-for-hire).  Defendants argue that the inconsistency between the factual allegation in Paragraph 50 of the Counterclaim and the exhibit attached to the Counterclaim "creates a fact issue as to whether the images were works for hire, not a ground for dismissal." (Defendants' Opposition, Docket No. 98 at 14).

Not so.  Defendants cannot *create* an "issue of fact," by pleading inconsistent statements that go to elements required to state their claim, and then arguing that the inconsistency bars dismissal at the pleadings stage.  That this inconsistency appears in Defendants' amended pleading only makes it worse, since Defendants had two opportunities to notice that they were pleading facts that were inconsistent with both their claim of ownership and the representations made to the Copyright Office – but  failed to correct or clarify their pleading.

In short, the allegations of Paragraphs 50 and 54, accepted as true, negate any possibility that the copyright in the Green Residence Photograph passed to Wagner via Rudolph's residuary estate.  Rather, the counterclaim itself alleges facts consistent with ownership of the copyright in that image by whoever hired Rudolph to create it. Therefore, the motion to dismiss the counterclaim insofar as it alleges infringement of the Green Residence Photograph is granted.

## II.   PLAINTIFF'S MOTION TO STRIKE IS GRANTED IN PART AND DENIED IN PART.

Plaintiff PRF moves to strike Defendants' Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Eleventh affirmative defenses.  (Docket No. 89).

This court's opinion of such motions has long been a matter of public record: "There is nothing dumber than a motion to strike boilerplate affirmative defenses; it wastes the client's money and the court's time." *Raymond Weil, S.A. v. Theron*, 585 F.Supp.2d 473, 489–90 (S.D.N.Y.2008).  But in 2019, the Second Circuit ruled that affirmative defenses should be stricken when the defendant fails to support their affirmative defenses with factual allegations that make such defenses plausible.  *GEOMC Co*., *supra.*, 918 F.3d at 99.  And in this case Defendants do not point to any such factual allegations that would support their Second, Fifth, Eighth, and Eleventh affirmative defenses.   And with good reason; there are none. Plaintiff's motion to strike Defendants' Second, Fifth, Eighth, and Eleventh Affirmative Defense is granted.

So I turn to Plaintiff's motion to strike Defendants' Third, Fourth, Sixth, Seventh, and Ninth Affirmative Defense.

For their **<u>Third Affirmative Defense</u>** Defendants state that "Defendants' alleged conduct constitutes fair use with respect to Count V." (Docket No. 86 at ¶ 60).  In Count V, Plaintiff seeks a declaration, pursuant to the Declaratory Judgment Act, that all of the materials from the Rudolph Archive donated to the LOC are in the public domain, and that Defendants do not own the intellectual property rights to the materials displayed by the LOC as part of the Paul Rudolph Collection.  (SAC ¶¶ 191-219).  "Fair use" is a not a defense to a claim for a declaratory judgment of ownership. "Fair use" is the use of copyrighted material done for a limited and "transformative" purpose, such as to comment upon, criticize, or parody a copyrighted work.  "Fair use" enables use of a copyrighted work without the need to obtain permission from the copyright owner. The

affirmative defense of fair use does not apply to the claim asserted in Count V.  Defendants' Third

Affirmative Defense is stricken.

Defendants' **Fourth Affirmative Defense** states that "Defendants were authorized by

Plaintiff to engage in the allegedly infringing conduct alleged in Count V." (Docket No. 86 at 60).

Defendants' **Seventh Affirmative Defense** states that "Plaintiff's copyright infringement claims

in Count V are barred, in whole or in part, by the copyright owner's permission or grant of a

license." (*Id*. at 61). Again, Count V is not a copyright infringement claim; rather, Count V is

brought pursuant to the DJA, seeking a declaration that the materials donated to the LOC are in

the public domain. Count V does not assert "allegedly infringing conduct;" it asserts that the

copyrights in certain images no longer exist, because the works themselves are in the public

domain.

Although these defenses as pleaded don't make much sense, I will assume that, by them,

Defendants assert that its posting of the Balle Photograph (the allegedly infringing conduct

underlying *Count IV*, which is Plaintiff's copyright infringement claim) was authorized or licensed

by the holder of the copyright in the Balle Photograph. But Defendants plead no facts whatever

suggesting that they were authorized, permitted, or licensed to use the Balle Photograph; on the

contrary, Defendants unambiguously plead that they posted that photograph by *mistake* (Docket

No. 86, Answer at ¶ 114 & Counterclaim at ¶ 30), which NEGATES any possibility that the posting

was authorized, permitted, or licensed.

The motion to strike Defendants' Fourth and Seventh Affirmative Defenses is granted.

For their **Sixth Affirmative Defense** Defendants assert that PRF's Lanham Act trademark

infringement claim is barred by the doctrines of laches and waiver, because PRF did not bring the

claim until 2020 despite being aware of Heritage since Heritage's formation in 2015.  Plaintiff

says it is not enough simply to allege that Plaintiff's failure to bring the claim until 2020 has caused Defendants undue prejudice. The court agrees.

The only facts pled to support Defendants' Sixth Affirmative Defense is that Plaintiff allegedly knew of Defendants' operation for five years prior to filing suit. While the Lanham Act includes no specific statute of limitations, in evaluating a laches defense to trademark infringement in a New York suit, we analogize to New York's six-year statute of limitations for fraud claims. *See Conopco, Inc. v. Campbell Soup Co*., 95 F.3d 187, 192 (2d Cir. 1996). The laches clock begins to run when the trademark owner knew or should have known, not simply that the infringer was using the potentially offending mark, but that it had a provable infringement claim against the infringer. *Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co*., 897 F.3d 413, 419 (2d Cir. 2018). For trademark claims under the Lanham Act, there is no presumption of laches if the claim is brought within six years. *Id.* To state a laches affirmative defense, the alleged infringer must plead that it has been prejudiced by the trademark owner's unreasonable delay in bringing the action. *Id.*

Defendants' pleading is nothing more than a formulaic recitation of the elements of laches; there are no facts relating to the purported "undue prejudice" to Defendants from any delay. Nor are there any facts pled that specifically relate to waiver. *Coach, Inc. v. Kmart Corp*., 756 F. Supp. 2d 421, 428 (S.D.N.Y. 2010) ("To establish waiver under New York law one must show that the party charged with waiver relinquished a right with both knowledge of the existence of the right and an intention to relinquish it."); *see also Car Freshner Corp. v. Just Funky LLC*, No. 5:19-CV-0289 (GTS/ATB), 2019 WL 6270991, at *5-6 (N.D.N.Y. Nov. 25, 2019) (striking laches and waiver defenses where no facts were pleaded and Plaintiff brought its trademark claim within six years). Defendants' Sixth Affirmative Defense is stricken.

Finally, Defendants' **<u>Ninth Affirmative Defense</u>** alleges that all of Plaintiff's claims are barred by the doctrine of unclean hands, because Plaintiff has purportedly "abandoned its mission to preserve Paul Rudolph's legacy." (Dkt. 86 at 61). The court is not confident that Defendants will be able to prove that PRF has engaged in the type of brazen behavior required to invoke the doctrine of unclean hands. But if any affirmative defense is fact-specific, it is unclean hands; the motion to strike that defense at this stage is denied.

## III.   LEAVE TO AMEND IS DENIED.

In their brief filed in opposition to PRF's motion to strike Defendants' affirmative defenses and to dismiss the counterclaim, Defendants seek leave to amend for a second time their (amended) counterclaim and certain of their (amended) affirmative defenses. (Docket No. 98 at 24). Plaintiff PRF argues that granting Defendants leave to file a *third* responsive pleading would be futile -- and, more importantly, highly prejudicial to PRF.

Leave to amend is denied because Defendants failed to attach their proposed third amended counterclaim and affirmative defenses to the SAC. Failure to attach the proposed amended pleading is not necessarily fatal to a party's request for leave to amend, but the court can deny leave to amend on the ground that it is unable to evaluate the propriety of granting leave without the opportunity to review the substance of the proposed amendment.

The Federal Rules of Civil Procedure detail the baseline for what is necessary in order to request leave to amend, including a notice of motion and a statement "with particularity the grounds for seeking the order." Fed. R. Civ. P. 7(b)(1)(B); *see also* Rule 15(a), 6(c)(1). To satisfy the particularity requirement, "a complete copy of the proposed amended complaint must accompany" a request for leave to amend "so that both the Court and opposing parties can understand the exact changes sought." *Separzadeh v. Iconix Brand Grp., Inc*., No. 15 Civ. 8643

(AT)(JCF), 2017 WL 1330331, at *2 (S.D.N.Y. Apr. 10, 2017) (internal quotation marks omitted). Defendants have done nothing to specify how they would alter their pleading.

While I cannot rule on the futility issue in the absence of a proposed amended pleading, I cannot see how it would be possible for Defendants to state a viable counterclaim. Moreover, they have had long enough to do so. They have had ample time to investigate and plead sufficiently any counterclaims or affirmative defenses they wish to assert. The court declines to give Defendants a third bite at the apple to do what they should have done in the first (and second) place: verify the underlying factual allegations supporting their counterclaim, and properly assert affirmative defenses to the applicable claims asserted against them by Plaintiff.

Leave to amend is denied.

## CONCLUSION

Plaintiff's motion to dismiss the amended counterclaim is GRANTED. Defendants' amended counterclaim is dismissed with prejudice. Plaintiffs' motion to strike the amended affirmative defenses is GRANTED in part and DENIED in part. Defendants' Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Eleventh Affirmative Defenses are dismissed with prejudice. The motion is denied as to the Ninth Affirmative Defense.

This is a written opinion. The Clerk of the Court is respectfully directed to close the motion pending at Docket Number 89 and to remove it from the court's list of open motions. This constitutes a written opinion.

Dated: September 8, 2022
New York, New York

_Colleen McMahon_
_____
U.S.D.J.

BY ECF TO ALL COUNSEL